UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

BRIAN BROCHU,

               Plaintiff,                    Case No. 2:20-cv-104

v.                                     Honorable Hala Y. Jarbou

UNKNOWN GODFREY, et al.,

               Defendants.
_____/

## OPINION

       This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants McDonald, Lovin, Albon, Stranaly, Buchanan, Hough, Horton, and Peller.  The Court will further dismiss, for failure to state a claim, Plaintiff's Fourteenth Amendment right to privacy claim against Defendant Godfrey.  The Court will also deny Plaintiff's motion to serve the complaint.  (ECF No. 5.)

## Discussion

I.      **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. The events about which he complains occurred at that facility.  Plaintiff sues the following URF staff:  Warden Connie Horton; Classification Directors Unknown McDonald and D. Peller; Kitchen Supervisors Unknown Lovin and Unknown Albon; Assistant Kitchen Supervisor Unknown Hough, Nurse Unknown Stranaly; Doctor Unknown Buchanan, and Food Steward Unknown Godfrey.

In July 2019, Plaintiff held a prison job in the kitchen.  Plaintiff alleges that on July 16, 2019, Defendant Godfrey filed a misconduct report that accused Plaintiff of possessing stolen food.  On July 23, 2019, non-defendant T. Corey-Spiker found Plaintiff guilty and imposed sanctions.  Presumably due to that finding, Plaintiff was removed from a work detail in the kitchen that same day.  Plaintiff requested and was granted a rehearing, and, on August 13, 2019, he was found not guilty.  That result apparently permitted Plaintiff to return to work, and he resumed his position in the kitchen on August 15, 2019.

A few days later, on August 18, 2019, while working in the kitchen, Plaintiff cut his finger.  He apparently struggled to contain the injury, leaving blood in the kitchen and on the floor.  Plaintiff alleges that he notified Godfrey of the injury.  Plaintiff further pulled Godfrey aside for a private conversation and informed Godfrey that he was infected with Hepatitis C.  Godfrey gave Plaintiff napkins and instructed him to backtrack and clean all the blood.  Godfrey later asked Plaintiff about his Hepatitis C status within earshot of another individual and without a clear attempt to protect Plaintiff's privacy.

2

At some point, Plaintiff was sent to the health care unit to attend to his wound. When Plaintiff returned to the kitchen to finish his shift, he learned that Godfrey had shared his Hepatitis C status with the other prisoners in the kitchen, who disparaged Plaintiff for his illness. Further, as a result of Plaintiff's injury, he was removed from his work detail for the following two days.

When Plaintiff returned to work, he alleges that he faced several challenges.  He asserts that while working on the food serving line, other prisoners became hostile, presumably because they too had learned of Plaintiff's illness.  Plaintiff requested a different assignment within the kitchen, and he was placed in the general kitchen pool.  He worked little in the subsequent two weeks.  Godfrey assigned Plaintiff only once during the two-week stretch: to chop food—the same assignment Plaintiff had when he cut his finger.  Plaintiff alleges that he faced further ridicule in the kitchen, but the complaint is unclear whether the source of the ridicule was Godfrey or other prisoners.  Plaintiff states that he notified the kitchen supervisors of the treatment, but they did not intervene.  In documents attached to the complaint, Plaintiff alleges that Godfrey's conduct was in response to Plaintiff's filing of grievances against Godfrey.

On September 9, 2019, a prisoner-counselor reclassified Plaintiff to work as a porter.  However, just two days later, the classification director, Defendant McDonald, classified Plaintiff as unemployable.  The classification restricted Plaintiff to his room for 30 days.  Plaintiff alleges that he never refused work, and he therefore informed Defendants Lovin and Albon of what Plaintiff perceived as a mistake by McDonald.   Plaintiff alleges neither Lovin nor Albon investigated.

When Plaintiff resumed employment, he was assigned to the work pool, then given a job as a wheelchair helper.  Plaintiff alleges that, although he had begun working as a wheelchair

helper, McDonald reassigned Plaintiff to the kitchen where he had previously faced derision for his illness.

For relief, Plaintiff seeks damages.

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed

by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

III.    **Defendants Stranaly, Buchanan, Hough, and Peller**

Plaintiff names Defendants Stranaly, Buchanan, Hough, and Peller as defendants to the action, but Plaintiff has not alleged any conduct involving them.

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants.  *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim).  Where a person is named as a defendant without an allegation of specific conduct, the complaint against that defendant is subject to dismissal, even under the liberal construction afforded to *pro se* complaints.  *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries").

5

Because Plaintiff fails to even mention Defendants Stranaly, Buchanan, Hough, and Peller in the body of the complaint, his claims against them fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). Accordingly, the complaint against Defendants Stranaly, Buchanan, Hough, and Peller must be dismissed.

## IV.     Defendants Lovin, Albon, Horton

Plaintiff fails to make specific factual allegations against Defendants Lovin, Albon, and Horton, other than his claims that they, as warden and other supervisory prison officials, failed to conduct adequate investigations or upheld denials of his grievances. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter*, 532 F.3d at 575-76; *Greene*, 310 F.3d at 899. The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Lovin, Albon, and Horton engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

## V.      Defendant McDonald

Plaintiff's only allegations against Defendant McDonald relate to Plaintiff's employment classification and assignments.  Presumably, Plaintiff intends to allege that McDonald violated rights provided to him under the Fourteenth Amendment's Due Process Clause.

The Sixth Circuit has consistently found that prisoners have no constitutionally protected liberty interest in prison employment under the Fourteenth Amendment.  *See, e.g.*, *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (district court properly dismissed as frivolous the plaintiff's claim that he was fired from his prison job); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job"); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003) (same).  Moreover, "as the Constitution and federal law do not create a property right for inmates in a job, they likewise do not create a property right to wages for work performed by inmates." *Carter*, 69 F. App'x at 680 (citing *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991), and *James v. Quinlan*, 866 F.2d 627, 629-30 (3d Cir. 1989)).  Under these authorities, Plaintiff fails to state a due process claim arising from the temporary termination of his prison employment or from the specific assignments thereto.

## VI.      Defendant Godfrey

Plaintiff's allegations against Defendant Godfrey appear to present claims that Godfrey shared information in violation of Plaintiff's Fourteenth Amendment right to privacy and that Godfrey retaliated against him in violation of the First Amendment.

A.      **Fourteenth Amendment Right to Privacy**

Plaintiff claims that Defendant Godfrey disclosed his personal information, specifically his Hepatitis C diagnosis, in violation of his right to privacy under the Fourteenth Amendment.

> Two types of interests have been identified by the Supreme Court as protected by the right to privacy that is rooted in the substantive due process protections of the Fourteenth Amendment.  One is the interest in "independence in making certain kinds of important decisions," *Whalen v. Roe*, 429 U.S. 589, 599-600 & n.26 (1977) (noting that these decisions have been characterized as dealing with "matters relating to procreation, marriage, contraception, family relationships, and child rearing and education."  (quoting *Paul v. Davis*, 424 U.S. 693, 713 (1976))).  The other type of privacy interest applicable to individuals is the "interest in avoiding disclosure of personal matters."  *Id*. at 599, 603-04 (recognizing that a statute requiring that the state be provided with a copy of certain drug prescriptions implicated the individual's interest in nondisclosure, but upholding the law because the statute contained adequate security measures); *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 465 (1977) (assuming that President Nixon had a legitimate expectation of privacy in his private communications, but upholding a federal law that provided for the review and classification of presidential materials by professional archivists).

*Lambert v. Hartman*, 517 F.3d 433, 440 (6th Cir. 2008).  Plaintiff's claim implicates the latter interest, i.e. the "individual's right to control the nature and extent of information released about that individual," which "has been coined an informational right to privacy."  *Bloch v. Ribar*, 156 F.3d 673, 683 (6th Cir. 1998).

In *J.P. v. DeSanti*, 653 F.2d 1080 (6th Cir. 1981), the Sixth Circuit reviewed the Supreme Court's opinions regarding the right to privacy, including *Whalen*, *Nixon*, and *Paul*, and concluded that "the Constitution does not encompass a general right to nondisclosure of private information." *Id*. at 1087-90.  The court declined to "recognize a general constitutional right to have disclosure of private information measured against the need for disclosure," reasoning that "[t]he Framers . . . cannot have intended that the federal courts become involved in an inquiry nearly as broad balancing almost every act of government . . . against its intrusion on a concept so

vague, undefinable, and all-encompassing as individual privacy." *Id*. at 1089-90. Consequently, the Sixth Circuit restricts the constitutional right to informational privacy to "those personal rights that can be deemed 'fundamental' or 'implicit in the concept of ordered liberty.'" *Id*. at 1090 (citations omitted). "Only after a fundamental right is identified should the court proceed to the next step of the analysis – the balancing of the government's interest in disseminating the information against the individual's interest in keeping the information private." *Lambert*, 517 F.3d at 440.[1]

Applying these standards, the Sixth Circuit has repeatedly rejected claims asserting a constitutional right to nondisclosure of personal information. *See*, *e.g.*, *Lee v. City of Columbus*, 636 F.3d 245, 261 (6th Cir. 2011) (city's requirement that employees returning from sick leave disclose the nature of their illness to their immediate supervisors does not implicate a fundamental right); *Summe v. Kenton Cnty. Clerk's Office*, 604 F.3d 257, 270-71 (6th Cir. 2010) (county's release of medical record of deputy county clerk to citizen pursuant to open records request did not implicate a right fundamental or implicit in the concept of ordered liberty so as to violate constitutional right to privacy); *Jenkins v. Rock Hill Local Sch. Dist.*, 513 F.3d 580, 591 (6th Cir. 2008) (school's disclosure of information to Children Services not a violation of plaintiff's constitutional rights); *Barber v. Overton*, 496 F.3d 449, 455-57 (6th Cir. 2007) (release of guards' birth dates and social security numbers did not rise to constitutional level); *Coleman v. Martin*, 63 F. App'x 791, 793 (6th Cir. 2003) (dissemination of prisoner's mental health records

---

[1] In contrast to the Sixth Circuit, other circuits hold that the disclosure of some kinds of personal information requires the court to balance the government's interests in disclosure against the individual's interest in avoiding disclosure. *See, e.g.*, *Barry v. New York*, 712 F.2d 1554, 1559 (2d Cir. 1983); *Fraternal Order of Police v. Philadelphia*, 812 F.2d 105, 110 (3d Cir. 1987); *Woodland v. Houston*, 940 F.2d 134, 138 (5th Cir. 1991) (per curiam); *In re Crawford*, 194 F.3d 954, 959 (9th Cir. 1999). Although the Supreme Court more recently contrasted the holding in *DeSanti* with the approach taken in the foregoing opinions, the Court declined to clarify the scope of a constitutional right to informational privacy. *See NASA v. Nelson*, 562 U.S. 134, 144-48 & n.9 (2011) (assuming, without deciding, that such a right existed in that case).

to parole board was not a constitutional violation); *Jarvis v. Wellman*, 52 F.3d 125, 126 (6th Cir. 1995) (disclosure of rape victim's medical records to an inmate did not violate her constitutional privacy rights); *DeSanti*, 653 F.2d at 1091 (constitutional rights not violated by dissemination of juvenile delinquents' social histories to various state agencies). Indeed, the Sixth Circuit has recognized an "informational-privacy interest of constitutional dimension" in only two instances: (1) where the release of personal information could lead to bodily harm, as in *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1061 (6th Cir. 1998) (dissemination of undercover officers personnel file to members of violent street gang some of whom officers testified against at trial); and (2) where the information released was of a "sexual, personal, and humiliating nature," as in *Bloch*, 156 F.3d at 684 (nonconsensual disclosure at press conference of details of plaintiff's rape).

In *Lee*, plaintiff challenged a city's policy requiring its employees to disclose the nature of their illness to their immediate supervisors after taking sick leave. 636 F.3d at 261. The court noted that it had "not yet confronted circumstances involving the disclosure of medical records that, in [its] view, are tantamount to the breach of a 'fundamental liberty interest' under the Constitution." *Id*. The court upheld the policy, reasoning that it did not "implicate the preservation of life and personal security interests recognized in *Kallstrom*, or the interest in shielding sexuality and choices about sex, protected in *Bloch*." *Id*.

In a case similar to the instant one, the Sixth Circuit determined that the disclosure of an inmate's HIV-positive status to prison guards did not violate the inmate's rights under the Fourteenth Amendment. *Doe v. Wigginton*, 21 F.3d 733, 740 (6th Cir. 1994) (holding that the plaintiff's claim "is foreclosed by the letter and reasoning" of *DeSanti*). *But see Moore v. Prevo*, 379 F. App'x 425, 428 (6th Cir. 2010) (distinguishing *Wigginton* and holding that an inmate has a

constitutionally protected interest in avoiding disclosure of his HIV-positive status to other inmates, subject to legitimate penological interests).

The logic of *DeSanti*, *Wigginton* and *Lee* forecloses Plaintiff's Fourteenth Amendment claim because the disclosure alleged by Plaintiff does not implicate a fundamental interest.  There is no relevant distinction between the disclosure of an inmate's HIV status to prison guards, which the Sixth Circuit has held does not implicate a fundamental interest, *Wigginton*, 21 F.3d at 740, and the disclosure of Plaintiff's Hepatitis C status to other prisoners and prison officials as Plaintiff alleges here.  *See, e.g.*, *Coleman v. Martin,* 63 F. App'x 791, 792 (6th Cir. 2003) (dissemination of prisoner's mental health records to parole board does not state a claim for relief under § 1983); *Holden v. Mich. Dep't of Corr.*, No. 1:12-cv-284, 2012 WL 2317538, at *5 (W.D. Mich. June 18, 2012) (no Fourteenth Amendment violation where plaintiff alleged that prison employee disclosed his HIV status to other prison officials and inmates); *Reeves v. Engelsgjerd,* No. 04-71411, 2005 WL 3534906, at *4 (E.D. Mich. Dec. 23, 2005) (doctor did not violate prisoner's constitutional rights by discussing his medical condition with non-medical staff and in front of other inmates).

To the extent that *Moore* favors a different result, that unpublished decision is neither binding nor persuasive in light of other published Sixth Circuit authority both preceding *Moore* (*Wigginton*) and following *Moore* (*Lee*).  *Moore* does not employ the fundamental-interest analysis required by *DeSanti*, *Lambert*, *Bloch*, and *Lee*, nor does it cite any Sixth Circuit opinion in support of its holding.  Instead, it expressly adopts the reasoning of the Third Circuit in *Doe v. Delie*, 257 F.3d 309 (3d Cir. 2001).  *See Moore*, 379 F. App'x at 427 ("'It is beyond question that information about one's HIV-positive status is information of the most personal kind and that an individual has an interest in protecting against the dissemination of such information.'") (quoting

*Delie*, 257 F.3d at 317).  As the court in *Delie* recognized, however, the Sixth Circuit's decisions in *Wigginton* and *DeSanti* conflicted with its own.  *Delie*, 257 F.3d at 319 n.7; *see Moore*, 379 F. App'x at 429 (Kethledge, J., dissenting).  Even if the Court accepts the finding in *Moore* and *Delie* that a prisoner has an "interest" in protecting against disclosure of his HIV or Hepatitis C status to other inmates, it does not necessarily follow that such an interest is one of "constitutional dimension."  *See Lambert*, 517 F.3d at 440.

In accordance with *DeSanti*, *Wigginton* and *Lee*, Plaintiff does not state a Fourteenth Amendment claim because the disclosure of his Hepatitis C status, as alleged here, does not implicate a fundamental interest protected by the right to privacy under the Fourteenth Amendment.

### B.     First Amendment Retaliation

Plaintiff further alleges that Defendant Godfrey's conduct constituted retaliation in violation of the First Amendment.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Id.*  Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

12

Upon initial review, the Court will conclude that Plaintiff's allegations sufficiently state a claim of retaliation.

## VII.   Pending Motion

Also before the Court is Plaintiff's motion to serve the complaint upon Defendants. (ECF No. 5.)  Plaintiff's motion is premature.  Prior to service of the complaint, Plaintiff's case must undergo two steps:   screening and mediation.   While the present opinion reflects the completion of screening, the action has not yet been mediated.   Accordingly, the Court will deny Plaintiff's motion without prejudice, subject to renewal.

## <u>Conclusion</u>

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants McDonald, Lovin, Albon, Stranaly, Buchanan, Hough, Horton, and Peller will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court will also dismiss, for failure to state a claim, Plaintiff's Fourteenth Amendment right to privacy claim against Defendants Godfrey.  Plaintiff's First Amendment retaliation claim against Defendant Godfrey remains in the case.  Finally, the Court will deny Plaintiff's pending motion to serve the complaint.  (ECF No. 5.)

An order consistent with this opinion will be entered.


Dated:   December 16, 2020                            /s/ Hala Y. Jarbou
                                                      HALA Y. JARBOU
                                                      UNITED STATES DISTRICT JUDGE